Filed 8/1/19

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ARTHUR SCOTT,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CITY OF SAN DIEGO,<br><br>    Defendant and Respondent. | D074061<br><br><br><br>(Super. Ct. No. 37-2015-00001940-CU-OE-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Kevin A. Enright, Judge. Reversed.

The Gilleon Law Firm and James C. Mitchell, for Plaintiff and Appellant.

Mara W. Elliot, City Attorney, and George F. Schaefer, Assistant City Attorney, for Defendant and Respondent.

In 2015, San Diego Police Department Sergeant Arthur Scott sued the City of San Diego (City), alleging race discrimination and retaliation in violation of the Fair Employment and Housing Act (Gov. Code, § 12900 et seq. (FEHA)). Scott rejected a $7,000 offer to compromise made by the City under Code of Civil Procedure

section 998[1] and proceeded to trial, where the City prevailed.  The trial court awarded the City a total of $51,946.96 in costs incurred after it served its Code of Civil Procedure section 998 offer, even though the trial court had found that plaintiff's FEHA claims were not frivolous.  While this appeal was pending, the Legislature amended FEHA's cost provision statute to specifically state that, *notwithstanding section 998 of the Code of Civil Procedure*, a prevailing defendant may not recover attorney fees and costs against a plaintiff asserting non-frivolous FEHA claims.  (See Gov. Code, § 12965, subd. (b), as amended by Stats. 2018, ch. 955, § 5, eff. Jan. 1, 2019.)  We conclude that, with this amendment, the Legislature sought to clarify existing law, rather than to change it.  "A statute that merely clarifies, rather than changes, existing law is properly applied to transactions predating its enactment."  (*Carter v. California Dept. of Veterans Affairs* (2006) 38 Cal.4th 914, 922 (*Carter*).)  We therefore apply the amended statute here and reverse the trial court's award of costs to the City.

FACTUAL AND PROCEDURAL BACKGROUND

A.  *Trial Court Proceedings*

In 2015, Scott sued the City, alleging race discrimination, harassment, and retaliation in violation of FEHA.  (Gov. Code, § 12940, subds. (h), (k).)  Scott's central allegation was that he was passed over for promotion and ultimately forced to transfer

---

[1]    Unless otherwise indicated, further statutory references are to the Code of Civil Procedure.

after complaining about the police department's use of a racist cartoon during a mandatory training session.

The City denied Scott's allegations and moved for summary judgment or summary adjudication of his claims. The trial court determined procedural defects in the motion barred the City from obtaining summary adjudication, and further determined triable issues of material fact supported Scott's retaliation claim and precluded summary judgment.

The City served Scott with an offer to compromise under section 998, offering "$7,000 in satisfaction of all claims for damages, including costs and attorney's fees." Scott did not accept this offer.

In February 2017, a jury determined that Scott reasonably believed he was opposing racial discrimination or harassment by engaging in two of five alleged actions: reporting certain locker room posters and complaining about the use of a racist cartoon during training. The jury further determined Scott had been subjected to adverse employment actions as a result of engaging in these two actions. However, the jury concluded that Scott's engagement in protected FEHA activity was not a substantial motivating reason for the adverse employment actions. The trial court entered judgment for the City.

The City filed a memorandum of costs seeking recovery of nearly $70,000. Scott filed a motion to tax costs, contending the City was not entitled to costs because it could not show his lawsuit was objectively without merit when brought. In a tentative opinion, the trial court agreed with Scott that a prevailing defendant in a FEHA action was entitled

3

to costs—including postoffer costs under section 998—only upon a showing, not made here, that plaintiff's claims were frivolous.

However, before making its tentative decision final, and at the City's request, the trial court continued Scott's motion to tax costs pending the City's request for publication of this court's decision in *Sviridov v. City of San Diego* (2017) 14 Cal.App.5th 514, 521, which held that a court may award a prevailing defendant costs under section 998 in a FEHA case even when the action does not objectively lack merit.

Upon *Sviridov*'s publication, the trial court reversed its tentative decision and entered an order granting in part and denying in part Scott's motion to tax costs. The trial court found the City had not shown that Scott's action was objectively without foundation when brought or that Scott continued to litigate after it clearly became so. The trial court thus concluded the City was not entitled to costs incurred prior to serving its section 998 offer. The trial court further found Scott had not established that the City's section 998 offer was nominal, token, or made in bad faith. The trial court awarded the City a total of $51,946.96 in costs incurred after it served its section 998 offer, comprised of $32,328.28 of ordinary, nonexpert witness, postoffer court costs; $418.68 in discretionary postoffer costs; and $19,200 in discretionary postoffer expert witness fees.

Scott moved for reconsideration of the cost award based on the subsequently published decision in *Arave v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (2018) 19 Cal.App.5th 525 (*Arave*), which disagreed with *Sviridov*. The trial court confirmed its ruling allowing the City to recover postoffer costs, noting that *Arave* did not persuade the court to change its ruling.

4

B. *Arguments on Appeal*

Scott challenges the trial court's order awarding costs to the City pursuant to section 998. In his initial briefing on appeal, Scott argues a defendant who prevails in a FEHA action is not entitled to costs or expert witness fees under section 998 absent a showing that plaintiff's action was objectively groundless.[2] Scott alternatively contends the City's section 998 offer was nominal and not made in good faith, such that it should not trigger section 998's cost allocation provisions. In response, the City maintains the trial court properly awarded costs under section 998, subdivision (c), and its $7,000 offer was not made in bad faith. These arguments by both parties are based on the version of section 12965, subdivision (b), which was in effect when the trial court ruled.

As noted, the Legislature amended the FEHA cost provision to preclude an award of fees and costs to a prevailing defendant unless the court finds the plaintiff brought or maintained a frivolous FEHA action.[3] After oral argument, we requested supplemental briefing from the parties to address what version of Government Code section 12965

---

[2] In support of his claim, Scott relies on the California Supreme Court's decision in *Williams v. Chino Valley Independent Fire District* (2015) 61 Cal.4th 97 (*Williams*), and contends this court's decision in *Sviridov* is contrary to *Williams* and therefore wrongly decided.

[3] Specifically, the amended statute provides: "In civil actions brought under this section, the court, in its discretion, may award to the prevailing party, including the department, reasonable attorney's fees and costs, including expert witness fees, except that, notwithstanding Section 998 of the Code of Civil Procedure, a prevailing defendant shall not be awarded fees and costs unless the court finds the action was frivolous, unreasonable, or groundless when brought, or the plaintiff continued to litigate after it clearly became so." (Gov. Code, § 12965, subd. (b), as amended by Stats. 2018, ch. 955, § 5.)

applies in this case: the one that was in effect when the trial court issued its order or the amended statute.

In his supplemental brief, Scott argues that the amended statute applies. He contends that, because the Legislature intended the amendment to clarify existing law, applying the law to conduct that predated its enactment is appropriate. The City contends the amendment changed the law and therefore can only be applied prospectively.[4]

DISCUSSION

A. *Statutory Framework*

As a general rule, the prevailing party in civil litigation is entitled to recover his or her costs as a matter of right: "Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." (§ 1032, subd. (b).)

Section 998 alters the allocation of costs awarded in civil litigation with a view toward encouraging pretrial settlement. (See *Martinez v. Brownco Construction Co.* (2013) 56 Cal.4th 1014, 1019 ["The policy behind section 998 is 'to encourage the settlement of lawsuits prior to trial.' "].) Section 998 provides, "(a) The costs allowed

---

[4] The City contends Scott forfeited the argument that the amended statute merely clarified the law by not raising the argument in his opening brief. We nonetheless exercise our discretion to consider the merits of this argument. (*In re Sheena K.* (2007) 40 Cal.4th 875, 887, fn. 7 [court has discretion to review forfeited claim].) We sought and obtained supplemental briefing on the effect of the amended statute because it is dispositive of the issue on appeal. (See *County of Colusa v. Charter* (1989) 208 Cal.App.3d 256, 260-261 [court requested supplemental briefing, directing parties to statute which was not considered by trial court but which was material to disposition of appeal and presented pure legal issues].)

under Sections 1031 and 1032 shall be withheld or augmented as provided in this section. [¶] . . . [¶] (c)(1) If an offer [to compromise] made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the plaintiff shall not recover his or her postoffer costs and shall pay the defendant's costs from the time of the offer." (§ 998, subds. (a), (c)(1).)[5]

FEHA contains its own discretionary costs provision. During the proceedings before the trial court, the statute provided in relevant part: "In civil actions brought under this section, the court, in its discretion, may award to the prevailing party, including the department, reasonable attorney's fees and costs, including expert witness fees." (Gov. Code, § 12965, subd. (b).) Despite its discretionary language, however, a prevailing *defendant* in a FEHA case must establish that the plaintiff's action was "frivolous, unreasonable, or without foundation." (*Christianburg Garment Co. v. Equal Employment Opportunity Com.* (1978) 434 U.S. 412, 421; *Mangano v. Verity, Inc*. (2008) 167 Cal.App.4th 944, 948-949 [statute applies only if plaintiff's lawsuit "is deemed unreasonable, frivolous, meritless, or vexatious"; the triggering requirement that an action must be meritless is not met simply because plaintiff has ultimately lost his case].)[6]

---

[5] Section 998 was originally enacted in 1969. (Stats. 1969, ch. 570, § 1, pp. 1200-1201; see *Pomeroy v. Zion* (1971) 19 Cal.App.3d 473, 475-476.)

[6] Government Code section 12965, subdivision (b), was originally enacted in 1980. As originally enacted, the statute provided in relevant part: "In actions brought under this section, the court, in its discretion may award to the prevailing party reasonable attorney fees and costs . . . ." (Stats. 1980, ch. 992, p. 3157.)

7

Effective January 1, 2019—after the cost award here was issued but while this appeal was still pending—the Legislature amended the FEHA cost provision to add the following italicized language: "In civil actions brought under this section, the court, in its discretion, may award to the prevailing party, including the department, reasonable attorney's fees and costs, including expert witness fees, *except that, notwithstanding Section 998 of the Code of Civil Procedure, a prevailing defendant shall not be awarded fees and costs unless the court finds the action was frivolous, unreasonable, or groundless when brought, or the plaintiff continued to litigate after it clearly became so*." (Gov. Code, § 12965, subd. (b), as amended by Stats. 2018, ch. 955, § 5, italics added.) Both parties agree that if the amended statute applies to this case, the trial court's cost award must be reversed.[7]

B. *Standard of Review*

We apply a de novo standard of review to determine whether an amended statute applies to conduct that predates its enactment. (*Murray v. Oceanside Unified School Dist.* (2000) 79 Cal.App.4th 1338, 1348.)

C. *Analysis*

As a general rule, statutes do not operate retroactively "unless the Legislature plainly intended them to do so." (*Western Security Bank v. Superior Court* (1997)

---

[7] Because the trial court found the City had not shown that Scott's action was frivolous when brought or that he continued to litigate a frivolous claim, and that finding is not challenged on appeal, the City is not entitled to costs under the terms of the amended statute.

15 Cal.4th 232, 243 (*Western Security Bank*); see *Carter*, *supra*, 38 Cal.4th at p. 922 ["a statute might not apply retroactively when it substantially changes the legal consequences of past actions, or upsets expectations based in prior law"].) Nonetheless, "[a] statute that merely clarifies, rather than changes, existing law is properly applied to transactions predating its enactment." (*Carter*, at p. 922.) "Such a statute 'may be applied to transactions predating its enactment without being considered retroactive' because it 'is merely a statement of what the law has always been.' " (*In re Marriage of Fellows* (2006) 39 Cal.4th 179, 183 (*Fellows*), quoting *Riley v. Hilton Hotels Corp.* (2002) 100 Cal.App.4th 599, 603; see also *Western Security Bank*, at p. 243 ["[A] statute that merely *clarifies*, rather than changes, existing law does not operate retrospectively even if applied to transactions predating its enactment" "because the true meaning of the statute remains the same."]; *McClung v. Employment Development Dept.* (2004) 34 Cal.4th 467, 471-472 (*McClung*) ["If the amendment merely clarified existing law, no question of retroactivity is presented" because "the amendment would not have changed anything."].)

In determining whether a statute changed or clarified existing law, the degree of consideration courts provide to a Legislature's statement of its intent depends on what actions courts have previously taken in interpreting the law, and whether the law was interpreted by the high court or intermediate appellate courts. When the California Supreme Court has " 'finally and definitively' interpret[ed] a statute, the Legislature does not have the power to then state that a later amendment merely declared existing law." (*Carter*, *supra*, 38 Cal.4th at p. 922.) But "if the courts have not yet finally and conclusively interpreted a statute and are in the process of doing so, a declaration of a

9

later Legislature as to what an earlier Legislature intended is entitled to consideration." (*McClung*, *supra*, 34 Cal.4th at p. 473; see *Western Security Bank*, *supra*, 15 Cal.4th at p. 244 ["the Legislature's expressed views on the prior import of its statutes are entitled to due consideration"].)

Applying these principles here, we conclude the amended statute clarified, rather than changed, existing law which did not unambiguously state how Code of Civil Procedure section 998 and Government Code section 12965, subdivision (b), should operate in cases where plaintiff brings a FEHA claim that is not frivolous, unreasonable, or groundless, but plaintiff does not ultimately prevail on that FEHA claim.

The legislative history of the amended statute indicates the Legislature intended the amendment to clarify rather than to change existing law. The preamble to the amended statute explains: "This bill would provide that a prevailing defendant is prohibited from being awarded fees and costs unless the court finds the action was frivolous, unreasonable, or groundless when brought or that the plaintiff continued to litigate after it clearly became so."[8] (Stats. 2018, ch. 955.) There were several other amendments to FEHA included with Senate Bill No. 1300. The Senate Judiciary Committee summarized, "This bill would make a series of changes to the Fair Employment and Housing Act designed to strengthen that statute's deterrent effect against discrimination, harassment and retaliation." (Sen. Judiciary Com., Rep. on Sen.

---

[8] On our own motion, we take judicial notice of the legislative history materials relied on by both parties in their supplemental briefs.

10

Bill No. 1300 (2017-2018 Reg. Session) April 4, 2018, p. 1.) Pertinent here, the Senate

Judiciary Committee explained the statute was being amended to "*clarify* that people

seeking to enforce their civil rights in good faith . . . should not be deterred by the

concern that they may be forced to pay attorneys' fees." (*Ibid*., italics added.) Before

stating that the amendment was designed to clarify existing law, the Senate Judiciary

Committee summarized the existing law (including section 998 and the FEHA cost

provision), and the split of authority regarding the interplay between the statutes.

Specifically, the report states:

> "Existing law gives courts the discretion to award reasonable
> attorneys' fees and costs, including expert witness fees, to a plaintiff
> who prevails on a claim for workplace discrimination, harassment,
> or retaliation, among other civil rights violations under the Fair
> Employment and Housing Act. (Gov. Code Sec. 12965(b).)
>
> "Existing law provides that if, during the course of litigation, one
> party makes a settlement offer, that offer is refused, and the recipient
> of the offer then fails to obtain a better result at trial, then the party
> that made the settlement offer is entitled to an award of all attorneys'
> fees and costs incurred from the time the settlement offer was
> rejected. (Code Civ. Proc. Sec. 998.)
>
> "Existing law is unsettled as to whether a plaintiff who rejects a
> settlement offer in an action alleging workplace discrimination,
> harassment, or retaliation, may be subject to paying the subsequently
> incurred attorneys' fees and costs of the defendant if the plaintiff
> does not obtain a result that is more favorable than the settlement
> offer was. (*Compare Sviridov*[, *supra*,] 14 Cal.App.5th 514, *to
> Arave*[, *supra*, 19 Cal.App.5th 525].)
>
> "This bill would clarify that a prevailing defendant shall not be
> awarded attorneys' fees and costs in an action under the Fair
> Employment and Housing Act, irrespective of the rejection of any
> offers of settlement, unless the court finds the action was frivolous,
> unreasonable, or totally without foundation when brought, or that the
> plaintiff continued to litigate after the action clearly became so."

11

(Sen. Judiciary Com., Rep. on Sen. Bill No. 1300 (2017-2018 Reg. Session) April 4, 2018, pp. 5-6.)

Later, the report again discusses the "existing law" embodied in both section 998, which is designed to promote settlement of legal disputes, and in FEHA's "one-way fee shifting structure," which awards a prevailing defendant attorney fees only in cases that are " 'frivolous, unreasonable, or totally without foundation.' "  (Sen. Judiciary Com., Rep. on Sen. Bill No. 1300 (2017-2018 Reg. Session) April 4, 2018, p. 24.)  Noting that "[a] conundrum arises in cases where both FEHA's fee-shifting rule and Code of Civil Procedure Section 998's fee shifting rule apply," and that "California courts have split on [the] question" of how to handle this issue, the report explains that the amended statute "would specify that the post-offer fee shifting effects of Code of Civil Procedure Section 998 do not apply to cases brought to enforce rights under FEHA."  (*Ibid.*)  The report explains the rationale for this approach, and for the statute's clarifying language, as follows:

> "If Code of Civil Procedure Section 998 applied to civil rights claims, then a defendant could make a lowball offer to the plaintiff almost immediately, forcing the plaintiff to choose between accepting the offer—effectively giving up on the claim—or continuing on, but now with the risk of having to pay a significant price, in the form of attorney's fees and costs.  It is rational to assume that, confronted by such a risk, many plaintiffs would simply walk away from the effort to vindicate their civil rights.
>
> "This bill would ensure that defendants cannot put Code of Civil Procedure Section 998 to that use.  By the same token, so that plaintiffs cannot use FEHA's one way fee-shifting rule to bring or drag out meritless claims without any consequence, the bill would also incorporate case law that allows judges to award attorneys' fees and costs to the defendant, even in a civil rights case under FEHA, if the lawsuit was frivolous, unreasonable, or totally without

12

foundation when brought, or if the plaintiff continued to litigate the case after the lawsuit had clearly become that way."  (Sen. Judiciary Com., Rep. on Sen. Bill No. 1300 (2017-2018 Reg. Session) April 4, 2018, pp. 24-25.)[9]

"The Legislature's declaration of an existing statute's meaning, while not dispositive, is a factor entitled to consideration."  (*Fellows*, *supra*, 39 Cal.4th at p. 184.) Here, the Legislature's intent is discernable from the sources cited *ante*, which explain: the statute was amended to "*clarify* that people seeking to enforce" non-frivolous FEHA claims "should not be deterred by the concern that they may be forced to pay attorneys' fees" under section 998; the amendment "*would . . . incorporate* case law that allows judges to award attorneys' fees and costs" to prevailing defendants "if the [plaintiff's FEHA] lawsuit was frivolous, unreasonable, or totally without foundation when brought"; and that the amendment "*would clarify* that a prevailing defendant shall not be awarded attorneys' fees and costs" in a FEHA case "irrespective of the rejection of any offers of settlement [under section 998], unless the court finds the action was frivolous, unreasonable, or totally without foundation when brought, or that the plaintiff continued to litigate after the action clearly became so."  (Sen. Judiciary Com., Rep. on Sen. Bill

---

9  The Assembly Committee on Judiciary's Report similarly discusses FEHA's fee shifting structure, and states:  "[T]he provision in this bill limiting the ability of a prevailing defendant to recover fees and costs unless the plaintiff's case is deemed frivolous or without merit appears to codify existing case law."  (Assem. Com. on Judiciary, Rep. on Sen. Bill No. 1300 (2017-2018 Reg. Session), as amended May 25, 2018, p. 8.)  However, this report does not mention section 998, or the split in authority in cases involving both section 998 and FEHA's attorney fees and costs statute, and accordingly is not helpful in determining whether the amended statute either changes or clarifies existing law for purposes of this appeal.

13

No. 1300 (2017-2018 Reg. Session) April 4, 2018, pp. 1, 5-6, 24-25, italics added.) We give due consideration to these expressions of the Legislature's declared intent and find they support our conclusion that the amended statute here was designed to clarify, rather than change, existing law. (See *Ailanto Properties, Inc. v. City of Half Moon Bay* (2006) 142 Cal.App.4th 572, 589, fn. 13 ["We may properly rely on the legislative history of subsequent enactments to clarify the Legislature's intent regarding an earlier enacted statute . . . . While the concept of 'subsequent legislative history' may seem oxymoronic, it is well established that 'the Legislature's expressed views on the prior import of its statutes are entitled to due consideration, and we cannot disregard them.' "].)

Because interpreting a statute is a judicial function, the expressions of legislative intent summarized above are not dispositive of whether the amended statute is truly a clarifying amendment. (*McClung*, *supra*, 34 Cal.4th at p. 473 [legislative declaration is " 'neither binding nor conclusive' " but is nonetheless a factor for the court to consider].) But we are persuaded here that the amendment to Government Code section 12965, subdivision (b), constitutes a clarifying amendment based on the framework established by our Supreme Court. As the court instructs in *Western Security Bank*, "[i]f the Legislature acts promptly to correct a perceived problem with a judicial construction of a statute, the courts generally give the Legislature's action its intended effect." (*Western Security Bank*, *supra*, 15 Cal.4th at p. 246.) Similarly, in *Carter*, our Supreme Court gave effect to a subsequent Legislature's clarification of existing law where the clarification "was made promptly in response to [two Court of Appeal opinions], in order

14

to clarify the ambiguities that caused confusion in the appellate courts and among litigants."  (*Carter*, *supra*, 38 Cal.4th at p. 930.)

We are confronted with the same scenario here, where the courts have reached different conclusions regarding the interaction of Code of Civil Procedure section 998 and Government Code section 12965, subdivision (b).  (Compare *Sviridov*, *supra*, 14 Cal.App.5th at p. 521, with *Arave*, *supra*, 19 Cal.App.5th at p. 552.)  This court in *Sviridov* carefully and thoroughly examined the issue, reaching the reasonable conclusion that precluding "section 998 costs unless the FEHA claim was objectively groundless would erode the public policy of encouraging settlement in such cases."  (*Sviridov*, at p. 521.)  Our opinion here should not be read as a critique of *Sviridov*, or the trial court's handling of the underlying case, but rather as a recognition that the issue is a close one and valid arguments exist on both sides of this closely-balanced question.[10]  (See *City of Sacramento v. Public Employees' Retirement System* (1994) 22 Cal.App.4th 786, 798 [in giving effect to subsequent assertions of legislative intent, courts consider, *inter alia*, whether "the question of meaning is closely balanced" and "the views of reasonable persons might well diverge"].)  Given the sequence of events surrounding the

---

[10]    We recognize the trial court did not have the opportunity to consider this later-enacted amendment, and that it was following this court's ruling in *Sviridov*.  Absent this subsequent development, which the trial court had no control over, we would find no error or abuse of discretion in how the trial court handled this matter.

15

Legislature's amendment,[11] the fact that " ' "the amendment was adopted soon after the controversy arose concerning the proper interpretation of the statute" ' " means " ' "it is logical to regard the amendment as a legislative interpretation of the original act—a formal change—rebutting the presumption of substantial change." ' "  (*Western Security Bank*, *supra*, 15 Cal.4th at pp. 243-244; see *People v. Lee* (2018) 24 Cal.App.5th 50, 59-60 [holding that "Legislature intended merely to clarify the statutory language after a conflict arose in the case law about its meaning" as reflected in competing Court of Appeal decisions]; *Kern v. County of Imperial* (1990) 226 Cal.App.3d 391, 401 [holding that amendment clarified the law when it was clear that "the intent of the sponsor of the bill was to *clarify* existing law and remove any ambiguity to specific fact situations"]; *Tyler v. State of California* (1982) 134 Cal.App.3d 973, 977 [concluding that statutory amendment merely clarified existing law when it was enacted in response to "confusion" created by a court decision]; cf. *Fellows*, *supra*, 39 Cal.4th at pp. 184-185 [holding that, where appellate courts had consistently held laches defense was available in actions for child support and spousal support arrearages, Legislature's enactment of statute eliminating laches defense constituted a change to existing law and did not "clarify a controversy over its interpretation"].)

In light of these divergent interpretations of existing law, both grounded in sound analyses but reaching conflicting conclusions, we give weight to the legislative

---

11     *Sviridov* was issued July 28, 2017; *Arave* was issued on January 2, 2018; and the first reading of Government Code section 12965, subdivision (b) occurred on February 16, 2018.

declarations regarding the amendment's intended effect to clarify ambiguities in existing law.  (See Sen. Judiciary Com., Rep. on Sen. Bill No. 1300 (2017-2018 Reg. Session) April 4, 2018, p. 24 [noting that "[a] conundrum arises in cases where both FEHA's fee-shifting rule and Code of Civil Procedure Section 998's fee shifting rule apply," and that "California courts have split on [the] question" of how to handle this issue; amended statute "would specify that the post-offer fee shifting effects of Code of Civil Procedure Section 998 do not apply to cases brought to enforce rights under FEHA"].)

We also find significant that the meaning of Government Code section 12965, subdivision (b), and specifically how it should be interpreted in light of Code of Civil Procedure section 998 in cases involving non-frivolous FEHA claims, has never been " 'finally and definitively' " interpreted by our state's highest court.  (See *Carter*, *supra*, 38 Cal.4th at p. 922.)  The *McClung* decision provides a helpful contrast.  There, the California Supreme Court had interpreted FEHA in a prior case to not impose personal liability on non-supervisory coworkers.  (*McClung*, *supra*, 34 Cal.4th at p. 471, citing *Carrisales v. Dept. of Corrections* (1999) 21 Cal.4th 1132, 1140 (*Carrisales*).)  The Legislature later amended the same FEHA provision to explicitly impose personal liability on non-supervisory coworkers—i.e., the Legislature adopted a position directly contrary to the Supreme Court's interpretation in *Carrisales*.  (*McClung*, at p. 471.)  In this situation, the Supreme Court concluded that although "the Legislature may amend the statute to say something different" after the Supreme Court definitively and finally interpreted the statute, "if it does so, it *changes* the law; it does not merely state what the

17

law always was." (*Id*. at p. 470.) No such final and definitive interpretation from the Supreme Court exists here.[12]

Scott contends that, "[b]ased on *Williams*, there should have been no question in future FEHA cases that [Code of Civil Procedure section 998] did not apply to cost awards." We reject Scott's suggestion that the Supreme Court's decision in *Williams* resolves the issue before us. The Supreme Court in *Williams* held that a prevailing defendant in FEHA cases can recover costs only if the plaintiff's case was "objectively without foundation when brought, or the plaintiff continued to litigate after it clearly became so." (*Williams*, *supra*, 61 Cal.4th at p. 115.) *Williams* did not address the question of whether costs may be awarded in a FEHA action pursuant to Code of Civil Procedure section 998. Scott himself concedes this point in his opening brief, acknowledging that *Williams* did not "consider the interplay between Government Code [section] 12965(b), [Code of Civil Procedure section] 1032 and [Code of Civil Procedure section] 998." And because *Williams* did not "finally and definitively interpret[]" whether a prevailing defendant can be awarded costs under Code of Civil Procedure section 998 in non-frivolous FEHA claims, the amended statute at issue here did not "overrule . . . the judicial function" of interpreting the law. (*McClung*, *supra*, 34 Cal.4th at pp. 473-474; cf. *In re Marriage of Howell* (2011) 195 Cal.App.4th 1062, 1071-1073 [holding that amendment to Family Code section 1612 to include subdivision (c)

---

12    The Supreme Court denied a petition for review in *Sviridov* on November 17, 2017, before *Arave* was published. The parties did not seek review in *Arave*.

18

constituted a material change in the law where it was enacted in response to California Supreme Court's opinion interpreting premarital waivers of spousal support under the statute].)

In its supplemental brief, the City considers many of the same authorities and legislative materials discussed *ante*, but it concludes the amended statute changed the law. The City notes that the amended statutory language at issue here was "just one of many amendments to FEHA included in Senate Bill 1300," and that the amendments are collectively described as "mak[ing] a series of changes" to FEHA "to strengthen the statute's deterrent effect against discrimination, harassment and retaliation," but we do not find these factors significant. The other amendments are not pertinent to the issue here, and we express no view as to whether Senate Bill No. 1300 merely clarified or changed existing law in other respects. We disagree with the City's claim that the amendment's inclusion "with major amendments to FEHA" demonstrates the Legislature "intended wholesale changes in the law" pertinent here. Even substantial changes do not necessarily defeat a determination that an amendment was a mere clarification where, as here, there are other circumstances demonstrating the true meaning of the statute remained the same. (*Carter*, *supra*, 38 Cal.4th at p. 930 [Legislature's material amendment of FEHA statute was made promptly in response to perceived confusion in decisions of the Courts of Appeal and was intended to clarify ambiguities in the former statutory language]; *Western Security Bank*, *supra*, 15 Cal.4th at p. 243 ["Our consideration of the surrounding circumstances can indicate that the Legislature made material changes in statutory language in an effort only to clarify a statute's true

19

meaning."].)[13] Finally, although we agree with the City's observation that the *text* of the statute itself does not explain whether the amendment was intended to clarify or change existing law, we disagree that the remaining legislative materials are not sufficiently clear on the issue for reasons already discussed *ante*.

In sum, we conclude that in amending Government Code section 12965, subdivision (b), the Legislature expressed an intent to clarify existing law regarding the recovery of attorney fees and costs in FEHA actions. The legislative materials demonstrate that the amendment was passed promptly after, and in response to, appellate court opinions expressing divergent views on this issue. We find the divergent opinions on this issue reveal an underlying ambiguity in the law, which had not been finally and conclusively resolved by our high court. Under these circumstances, we give due consideration to the Legislature's expressed intent that it was clarifying not changing existing law by expressly stating that, notwithstanding Code of Civil Procedure section 998, a prevailing defendant may not recover attorney fees and costs against a plaintiff asserting and pursuing a non-frivolous FEHA lawsuit. For all these reasons, we

---

[13] The City's argument that the legislative materials refer to competing public policies underlying section 998 and FEHA's one-way fee shifting structure does not alter our analysis. Instead, we conclude this discussion simply highlights what was evident from the opinions in *Sviridov* and *Arave*—namely, that reasonable minds can differ on the intended meaning of the existing law. We do not believe that this discussion in the Senate Judiciary Committee's Report, which is outlined in more detail *ante*, demonstrates the Legislature was prospectively changing the law as the City contends. This discussion is contained in a section that also discusses existing law, as well as the split of authority in *Sviridov* and *Arave*, and the report earlier makes clear that the amendment at issue here is designed to clarify and not prospectively change the law.

conclude the amended statute governs this case, and we need not address whether the statute operates retroactively or has retroactive effect. (*McClung*, *supra*, 34 Cal.4th at pp. 472-475; see *Bowen v. Board of Retirement* (1986) 42 Cal.3d 572, 575, fn. 3 [where court concluded that statutory amendment clarified rather than changed existing law, there was "no need to reach [appellant's] arguments regarding the amendment's retroactive application"].)

Because we conclude the amended statute applies, and we reverse the trial court's ruling on that basis, we need not address Scott's alternative argument that the City's $7,000 offer to compromise was nominal and made in bad faith.

## DISPOSITION

The cost award is reversed. Scott is entitled to recover his costs on appeal.

GUERRERO, J.

WE CONCUR:

IRION, Acting P. J.

DATO, J.

21