Filed 11/12/25 (unmodified opn. attached)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>RYAN SCOTT WARNER,<br><br>      Defendant and Appellant. | A171126<br><br>(Napa County<br>Super. Ct. No. CR169461)<br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br>[NO CHANGE IN JUDGMENT] |

BY THE COURT:

It is ordered that the opinion filed herein on October 21, 2025, be modified as follows:

On page 15 in the first full paragraph beginning with "In any event," in the seventh line, "We disagree.  Our" is deleted and replaced with "But our" and, in the following line, "recognized" is deleted and replaced with "explained," so that the paragraph now reads in relevant part, ". . . without finding malice.  But our high court has explained that first degree murder by torture . . . ."

On page 15, the last sentence on the page beginning with "Thus, the jury finding that Warner had the mental state required . . . ." is deleted and replaced with the following:

Here, the jury was instructed it could find Warner guilty of first degree murder by torture only if it found he "willfully,

1

deliberately, and with premeditation intended to inflict extreme and prolonged pain" and he "intended to inflict such pain on the person killed for the calculated purpose of revenge, extortion, persuasion, or any other sadistic reason." (CALCRIM No. 521.) The guilty verdict means the jury found Warner harbored a mental state our high court has recognized is "*more culpable* than the malice required for second degree murder" (*People v. Brown*, at p. 456, italics added). The jury's finding of a mental state more culpable than malice necessarily meets the element of malice required for murder.

This modification does not change the judgment. The petition for rehearing is denied.


Dated:_____          _____

                                   Stewart, P.J.




A171126, *People v. Warner*


2

Trial Court:  Superior Court of Napa County


Trial Judge:  Hon. Francisca P. Tisher


Solomon Wollack, under appointment by the Court of Appeal, for Defendant and Appellant


Rob Bonta, Attorney General; Lance E. Winters, Chief Assistant Attorney General; Jeffrey M. Laurence, Assistant Attorney General; Amit Kurlekar, Timothy Moore, Deputy Attorneys General, for Plaintiff and Respondent


A171126, *People v. Warner*

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>RYAN SCOTT WARNER,<br><br>     Defendant and Appellant. | A171126<br><br>(Napa County<br> Super. Ct. No. CR169461) |

Defendant Ryan Scott Warner appeals from the trial court's order denying his petition for resentencing under Penal Code section 1172.6. He contends the trial court improperly engaged in fact finding at the prima facie stage and the matter should be remanded for the trial court to decide the issue applying the correct standard of law. We conclude the record conclusively establishes Warner is ineligible for relief under section 1172.6, and we therefore affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

*Underlying Murder Conviction*

In November 2015, the Napa County District Attorney filed an information charging Warner and codefendant Sara Lynn Krueger[1] with the murder of Krueger's daughter, Kayleigh S., with the special circumstance of

---

[1] We address Krueger's appeal of the denial of her petition for resentencing in an opinion issued this day. (*People v. Krueger* (Oct. 21, 2025, A171137).)

torture (Pen. Code,[2] §§ 187, subd. (a), 190.2, subd. (a)(18); count 1), and assault resulting in death of a child under eight years old (§ 273ab, subd. (a); count 2).

"The case was prosecuted under the theory that the murder was by torture, and that Warner directly committed the crimes, or aided and abetted Krueger in committing them. The cases against Warner and Krueger were tried to separate juries in the spring of 2017." (*People v. Warner* (Jan. 20, 2021, A152049) 2021 WL 194226 [nonpub. opn.].) The prosecution did not proceed under theories of either felony murder or natural and probable consequences, and the jury received no instructions on either theory. The only theory of first degree murder presented to the jury was murder by torture.

In May 2017, the jury found Warner guilty of first degree murder, found the special circumstance of torture true, and found Warner guilty of assault causing death of a child. In Warner's direct appeal, we reversed the torture special circumstance finding, concluding there was insufficient evidence that Warner acted with specific intent to kill, and otherwise affirmed the judgment. We rejected Warner's claim of insufficiency of the evidence as to the first degree murder conviction, concluding there was "ample evidence to support a finding of deliberate and premeditated intent to cause extreme pain or suffering for sadistic purpose."

On remand after the appeal, the trial court sentenced Warner to 25 years to life for count 1 (first degree murder) and 25 years to life for count 2 (assault causing death of a child), staying the sentence for count 2 pursuant to section 654.

---

[2] Undesignated statutory references are to the Penal Code.

2

*Petition for Resentencing*

Effective January 1, 2019, Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) amended the murder statutes at sections 188 and 189 to "eliminate[ ] natural and probable consequences liability for murder as it applies to aiding and abetting, and limit[ ] the scope of the felony-murder rule." (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).) Section 188, which defines malice required for murder, was amended to provide, "Except as stated in subdivision (e) of Section 189 [on felony murder], in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)

Senate Bill 1437 also created a procedure for those convicted of murder under the former law to seek retroactive relief. (*Lewis*, *supra*, 11 Cal.5th at p. 957.) This procedure, now codified at section 1172.6, permits "[a] person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime" to petition the court to have the murder "conviction vacated and to be resentenced on any remaining counts." (§ 1172.6, subd. (a).) To make a prima facie showing of eligibility for relief under section 1172.6, a petitioner must meet the condition that he or she "could not presently be convicted of murder . . . because of changes to Section 188 or 189 made effective January 1, 2019" (§ 1172.6, subd. (a)(3)), that is, changes made by Senate Bill 1437. (*People v. Curiel* (2023) 15 Cal.5th 433, 461 (*Curiel*).)

In January 2024, Warner filed a petition for resentencing under section 1172.6, and the court appointed counsel to represent him. In March 2024, the prosecution filed a response, arguing Warner was ineligible for relief as a

3

matter of law because he was not convicted under any theory of murder liability affected by Senate Bill 1437. In July 2024, Warner filed a supplemental brief in support of his petition. He argued he made a prima facie case for relief because the instruction given to the jury on murder by torture "permitted a conviction on an impermissible theory of imputed malice."

On July 25, 2024, the trial court held a hearing on Warner's petition. The trial court determined that Warner did not make a prima facie case for relief, finding "he has not presented evidence to show that he could not be convicted of the murder charges based on changes made to Penal Code Section 188 and 189 that became effective January 1st, 2019."

Warner timely appealed.

## DISCUSSION

A.    *Relevant Legal Principles*

1.    <u>The Elements of Murder and Liability for Aiders and Abettors</u>

Murder is an "unlawful killing . . . with malice aforethought." (§ 187, subd. (a).) The requisite malice for murder may be express or implied. (§ 188, subd. (a).) "Implied malice requires proof of both a physical act and a mental state." (*In re Ferrell* (2023) 14 Cal.5th 593, 600.) The requisite physical act is one "whose natural consequences are dangerous to life," and the mental state required is "deliberately perform[ing] the act with a conscious disregard for life, knowing the act endangers another's life." (*Ibid.*)

Murder is of the second degree unless the offense meets the statutory requirements for first degree murder specified in section 189. (§ 189, subd. (b).) Murder "perpetrated by . . . torture . . . is murder of the first degree." (§ 189, subd. (a).)

4

"All persons concerned in the commission of a crime, . . . whether they directly commit the act constituting the offense, or aid and abet in its commission . . . are principals in any crime so committed." (§ 31.) An aider an abettor's "guilt is based on a combination of the direct perpetrator's acts and the aider and abettor's own acts and own mental state." (*People v. McCoy* (2001) 25 Cal.4th 1111, 1117, italics omitted.)

Senate Bill 1437 "narrowed or eliminated certain forms of accomplice liability for murder" (*Curiel, supra*, 15 Cal.5th at p. 440), but direct aiding and abetting of implied malice murder remains a valid theory of murder liability. (See *People v. Reyes* (2023) 14 Cal.5th 981, 990 [citing cases holding "a defendant may directly aid and abet an implied malice murder"]; *People v. Gentile* (2020) 10 Cal.5th 830, 848, 850 ["notwithstanding Senate Bill 1437's elimination of natural and probable consequences liability for second degree murder, an aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life"].)

2.     The Prima Facie Showing Under Section 1172.6

The Legislature's purpose in enacting Senate Bill 1437 was "to limit murder liability to established theories that incorporated the requisite intent" of malice aforethought and "to provide the opportunity to petition for relief to defendants who were convicted under an invalid theory," that is, a theory of murder liability eliminated by Senate Bill 1437. (*Curiel, supra*, 15 Cal.5th at pp. 462–463.)

Under section 1172.6, the process for a defendant seeking retroactive relief "begins with the filing of a petition containing a declaration that all requirements for eligibility are met ([§ 1172.6], subd. (b)(1)(A)), including

5

that '[t]he petitioner could not presently be convicted of murder . . . because of changes to [Penal Code] Section 188 or 189 made effective January 1, 2019,' the effective date of Senate Bill 1437 (§ 1172.6, subd. (a)(3)). [¶] When the trial court receives a petition containing the necessary declaration and other required information, the court must evaluate the petition 'to determine whether the petitioner has made a prima facie case for relief.' (§ 1172.6, subd. (c); [citation].) If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition. [Citations.] If, instead, the defendant has made a prima facie showing of entitlement to relief, 'the court shall issue an order to show cause.' (§ 1172.6, subd. (c).)" (*People v. Strong* (2022) 13 Cal.5th 698, 708.)

If the record demonstrates the jury necessarily found the petitioner guilty of murder under a still-valid theory, the petitioner does not satisfy the condition that he or she "could not presently be convicted of murder . . . because of changes to Section 188 or 189 made" by Senate Bill 1437 (§ 1172.6, subd. (a)(3)); under this circumstance, the petition fails at the prima facie stage, and the petitioner is ineligible for relief under section 1172.6 as a matter of law. (See *Curiel*, *supra*, 15 Cal.5th at pp. 464–465 [if the verdicts and jury instructions reflect that the jury made "all of the factual findings necessary to support a murder conviction under current law," this would conclusively establish ineligibility for relief]; *People v. Harden* (2022) 81 Cal.App.5th 45, 59–60 [where the jury instructions and verdicts demonstrated the jury necessarily found the petitioner was the actual killer and therefore was not eligible for relief, the trial court correctly denied the petition at the prima facie stage].)

6

### 3. Standard of Review

We independently review the trial court's determination that Warner failed to make a prima facie showing for relief under section 1172.6. (*People v. Morales* (2024) 102 Cal.App.5th 1120, 1131.) "[W]e may look to the jury's verdicts, and the factual findings they necessarily reflect, to determine whether the record of conviction refutes the factual allegations in [Warner]'s petition." (*Curiel, supra,* 15 Cal.5th at p. 465.)

### B. *The Jury Instructions Given*

We examine the jury instructions because eligibility for relief under section 1172.6 " 'turn[s] on an examination of both the governing law at the time of trial and the record of conviction, including the jury instructions.' " (*People v. Antonelli* (2025) 17 Cal.5th 719, 731.) In this case, the jury was instructed on aiding and abetting, the elements of murder, first degree murder based on murder by torture, and special circumstance murder by torture.

Under CALCRIM No. 401 on aiding and abetting, the jury was told that to prove a defendant is guilty as an aider and abettor, the People must show the defendant "knew that the perpetrator intended to commit the crime," "intended to aid and abet the perpetrator in committing the crime," and, by "words or conduct . . . did in fact aid and abet the perpetrator's commission of the crime." The instruction further explained, "Someone aids and abets a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime." (Italics omitted.)

Under CALCRIM No. 520, first or second degree murder with malice aforethought, the jury was instructed in relevant part: "The defendants are

7

charged in Count 1 with murder. [¶] To prove that a defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant committed an act that caused the death of another person; [¶] AND [¶] 2. When the defendant acted, he or she had a state of mind called malice aforethought.

"There are two kinds of malice aforethought, express malice and implied malice. Proof of either is sufficient to establish the state of mind required for murder. [¶] The defendant acted with *express malice* if he or she unlawfully intended to kill.

"The defendant acted with *implied malice* if: [¶] 1. He or she intentionally committed an act, or intentionally failed to act in those situations where he or she is under legal duty to act; [¶] 2 The natural and probable consequences of the act or omission or failure to act were dangerous to human life; [¶] 3. At the time he or she acted, he or she knew his or her act was dangerous to human life; [¶] AND [¶] 4. He or she deliberately acted with conscious disregard for human life."

"If you decide that the defendant committed murder, it is murder of the second degree, unless the People have proved beyond a reasonable doubt that it is murder of the first degree as defined in CALCRIM No. 521."

CALCRIM No. 521, first degree murder, provided in relevant part: "A defendant is guilty of first degree murder if the People have proved that the defendant murdered by torture. The defendant murdered by torture if: [¶] 1. He or she willfully, deliberately, and with premeditation intended to inflict extreme and prolonged pain on the person killed while that person was alive; [¶] 2. He or she intended to inflict such pain on the person killed for the calculated purpose of revenge, extortion, persuasion, or any other sadistic reason; [¶] 3. The acts causing death involved a high degree of probability of death; [¶] AND [¶] 4. The torture was a cause of death."

CALCRIM No. 733, special circumstance murder by torture required the People to prove, among other things, that the "defendant intended to kill" the victim, Kayleigh.

The jury was also instructed that murder as charged in count 1 "requires a specific intent or mental state," and, "to find a person guilty of this crime, that person must not only intentionally commit the prohibited act, but must do so with a specific intent.  The act and the specific intent required are explained in the instruction for that crime."

C.    *Warner is Ineligible for Relief Under Section 1172.6 Because the Jury Found Him Guilty of Murder Under a Currently Valid Theory*

As we have seen, section 1172.6 provides a procedure for seeking retroactive relief for "defendants who were *convicted under an invalid theory*." (*Curiel, supra*, 15 Cal.5th at p. 463, italics added.)  But Warner was prosecuted exclusively under theories of murder liability that are currently valid.  The jury was not given the option of finding him guilty under an invalid theory (that is felony murder without meeting the requirements of section 189, subdivision (e)), murder under the natural and probable consequences doctrine, or any other theory imputing malice solely based on his participation in a crime).  The jury found Warner guilty of first degree murder by torture, and no claim is made that Senate Bill 1437 eliminated or altered this theory of murder liability.

The jury verdicts and jury instructions in this case conclusively demonstrate Warner is ineligible for resentencing relief because he does not meet the condition that he "could not presently be convicted of murder . . . because of changes to Section 188 or 189 made" by Senate Bill 1437 (§ 1172.6, subd. (a)(3)).  It follows that his petition for resentencing was properly denied at the prima facie stage.  (See *Curiel, supra*, 15 Cal.5th at pp. 464–465; *People v. Harden, supra*, 81 Cal.App.5th at pp. 59–60.)

9

Warner contends the trial court erred in its ruling because it made impermissible factual findings at the prima facie stage. We agree with Warner that the trial court should not have engaged in factfinding that involved weighing the evidence that was presented at trial. (See *Lewis, supra*, 11 Cal.5th at p. 971–972 [at the prima facie stage, "a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion' "].) However, we review whether the challenged ruling is correct, not the analysis the court used to reach it. (*In re Baraka H.* (1992) 6 Cal.App.4th 1039, 1045; see *Sviridov v. City of San Diego* (2017) 14 Cal.App.5th 514, 519 [under independent review, the appellate court reviews the trial court's ruling, not its reason for the ruling].) The trial court's ruling that Warner did not make a prima facie case for relief is correct, even though we do not follow its reasoning.

In his opening appellate brief, Warner argues we should remand to the trial court to decide whether he has made a prima facie case applying the correct legal standard. But a " ' "decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason." ' " (*As You Sow v. Conbraco Industries* (2005) 135 Cal.App.4th 431, 447.) Warner offers no authority suggesting that he would be denied a right to a fair hearing by our affirming the trial court's legally correct ruling that he is ineligible for relief under section 1172.6 *as a matter of law*. This is not a circumstance where remand is necessary to permit the trial court to exercise its discretion or find facts in the first instance.

In his reply brief, Warner addresses the correctness of the trial court's ruling (rather than its reasoning) for the first time, arguing he did establish a prima facie case for relief. He relies on *People v. Powell* (2021) 63

Cal.App.5th 689 (*Powell*), *People v. Langi* (2022) 73 Cal.App.5th 972 (*Langi*), and *People v. Maldonado* (2023) 87 Cal.App.5th 1257 (*Maldonado*).

In *Powell*, which did not involve a petition for resentencing under Senate Bill 1437, the Court of Appeal concluded that the standard aiding and abetting instructions, including CALCRIM No. 401, "were not tailored for implied malice murder" and "were erroneous" when given in the context of a prosecution under an implied malice theory. (63 Cal.App.5th at pp. 711, fn. 25, 714.)

In *Langi*, the appellate court held the petitioner made a prima facie case for relief under Senate Bill 1437 even though the jury that found him guilty of second degree murder had received no instructions on any currently invalid theory of murder liability; the jury had not been instructed on pre-Senate Bill 1437 felony murder, murder under the natural and probable consequences doctrine, or any other theory imputing malice solely based on his participation in a crime). (73 Cal.App.5th at pp. 975–976.) Relying on the instructional error identified in *Powell*, the *Langi* court concluded that, when a jury is given a standard aiding and abetting instruction "without tailoring it to the specifics of th[e] crime [of implied malice murder], the instruction creates an ambiguity under which the jury may find the defendant guilty of aiding and abetting second degree murder without finding that he personally acted with malice." (*Langi*, at p. 982.)

*Maldonado* followed the reasoning of *Langi*. There, defendant Maldonado was convicted of first degree murder; the jury was not instructed on any invalid theory of murder, and it was instructed on aiding and abetting, implied malice, and lying-in-wait first degree murder. (*Maldonado*, *supra*, 87 Cal.App.5th at p. 1259.) When Maldonado subsequently filed a petition for resentencing under section 1172.6, the Court of Appeal held he

11

made a prima facie case for relief, reasoning, "the jury could have construed the instructions such that, 'to be guilty as an aider and abettor of [lying in wait first degree] murder, [Maldonado] need only have intended to encourage the perpetrator's intentional act—in this case, [a surprise attack on the victim]—whether or not [Maldonado] intended to aid or encourage [the victim's] killing, and whether or not he personally knew of and disregarded the risk of such a killing.'" (*Id.* at p. 1266.)

Thus, in *Langi* and *Maldonado*, a petitioner who was prosecuted and convicted exclusively under currently valid theories of murder was nonetheless deemed to have made a prima facie case for resentencing relief based on asserted error or ambiguity in the aiding and abetting jury instructions given at the petitioner's criminal trial. This approach is not universally followed by other courts.

In *People v. Burns* (2023) 95 Cal.App.5th 862, for example, petitioner Burns argued he made a prima facie case because the aiding and abetting instruction given at his trial may have resulted in the jury "convict[ing] him based on some 'other theory under which malice is imputed to a person based solely on that person's participation in a crime.'" (*Id.* at p. 865.) The Court of Appeal rejected the argument, reasoning, "[T]he petition process . . . was designed to permit the resentencing of defendants who were properly convicted under the law that applied at the time, but 'could no longer be convicted of murder' *because of recent legislative changes.* . . . The problem Burns raises in his petition [of an erroneous jury instruction], however, has nothing to do with the legislative changes to California's murder law effected by Senate Bill No. 1437. . . . Accordingly, he did not satisfy the section 1172.6, subdivision (a)(3) condition as part of his required prima facie showing." (*Id.* at p. 867, italics added.) The court further explained that the

"instruction provided at Burns's trial created a potential issue of instructional error, but it did not operate to offer the jury a theory of legal liability that can no longer support a conviction for murder as a result of the recent statutory changes." (*Id.* at pp. 868–869.)

In *People v. Berry-Vierwinden* (2023) 97 Cal.App.5th 921 (*Berry-Vierwinden*), the petitioner was convicted of first degree murder by a jury instructed on aiding and abetting, the elements of murder, and lying-in-wait murder, and he relied on *Maldonado* to argue he made a prima facie case for resentencing relief. (*Berry-Vierwinden*, at pp. 925–929, 933.)

Rejecting the argument, the Court of Appeal reasoned: "To establish a prima facie case for relief, Berry-Vierwinden was required to demonstrate that he could not presently be convicted of murder 'because of' the 'changes' made by Senate Bill No. 1437. (§ 1172.6, subd. (a)(3).) 'The "changes" described in section 1172.6, subdivision (a)(3) plainly refer to the substantive amendments to sections 188 and 189 that were enacted along with the resentencing provisions in Senate Bill 1437.' (*People v. Curiel* (2023) 15 Cal.5th 433, 461; [citation].) [¶] . . . [T]he instructional errors Berry-Vierwinden asserts have nothing to do with these 2019 legislative changes. What he is really arguing is that the instructions 'may have misled the jury as to what was *then* required to convict [him].' [Citation.] By the time of his trial in 2010, California law was already clear that a direct aider and abettor could not be convicted of lying-in-wait murder on an imputed malice theory. Specifically, the Supreme Court had ruled that: (1) the perpetrator of a first degree murder by means of lying in wait must act with malice aforethought [citations]; and (2) a direct aider and abettor of murder must at a minimum 'know and share the murderous intent of the actual perpetrator.' " (*Berry-Vierwinden*, *supra*, 97 Cal.App.5th at p. 935.) The court observed that the

13

petitioner's argument "amount[ed] to 'a routine claim of instructional error' that 'could have been asserted on appeal from the judgment of conviction.' " (*Id.* at p. 936.)

The *Berry-Vierwinden* court disagreed with *Maldonado* and *Langi* to the extent those cases could "be read to suggest that such an instructional error may be asserted as a basis for section 1172.6 relief—even if the alleged error could have been raised on direct appeal under then-existing law not changed by Senate Bill No. 1437" because "the courts in *Maldonado* and *Langi* did not consider the language of section 1172.6, subdivision (a)(3) requiring that defendants show they can no longer be convicted of murder 'because of changes' made by Senate Bill No. 1437." (*Berry-Vierwinden*, *supra*, 97 Cal.App.5th at p. 936.)

We find *Berry-Vierwinden* and *Burns* persuasive and follow their reasoning.[3] When Warner was tried in 2017 it was clear that a direct aider and abettor could not be convicted of murder without personally harboring malice. (See *People v. McCoy*, *supra*, 25 Cal.4th at p. 1118 ["an aider and abettor's mental state must be at least that required of the direct perpetrator"; for murder, "when guilt does not depend on the natural and probable consequences doctrine, . . . the aider and abettor must know and share the murderous intent of the actual perpetrator"].) Warner was not

---

[3] We note the California Supreme Court may resolve the conflict between *Langi/Maldonado* and *Burns/Berry-Vierwinden* in *People v. Lopez* (Oct. 4, 2024, F085300) (nonpub. opn.), review granted Jan. 15, 2025 (S287814). Our high court granted review in *Lopez* limited to the question: "Does Penal Code section 1172.6, subdivision (a)(3), which requires defendants to allege that they 'could not presently be convicted of murder or attempted murder because of changes to section 188 or 189 made effective January 1, 2019,' render ineligible for relief petitioners who could have raised their challenges to imputed malice on prior direct appeal?"

14

convicted of murder under a theory in which malice was "imputed to a person based solely on that person's participation in a crime" (§ 1172.6, subd. (a)), and he cannot show that he "could not presently be convicted of murder . . . *because of changes* to Section 188 or 189" made by Senate Bill 1437 (*id.*, subd. (a)(3), italics added).

In any event, even if we were to apply the framework of *Langi* and *Maldonado*, we would conclude Warner has not made a prima facie case for relief. He argues that, under the instructions given, the "jurors could potentially have convicted Warner of first degree murder on the rationale that he intended to aid and abet Krueger in inflicting extreme and prolonged pain—but without finding that he intended to kill or consciously disregarded the risk to life," that is, without finding malice. We disagree. Our high court has recognized that first degree murder by torture "require[s] proof of a *mental state more culpable than the malice required for second degree murder*, in keeping with the Legislature's determination that murders perpetrated by these means warrant the greater punishment reserved for first degree murder. For torture murder, the prosecution must show 'wilful, deliberate, and premeditated intent to inflict extreme and prolonged pain.' " (*People v. Brown* (2023) 14 Cal.5th 453, 456, italics added; see *People v. Steger* (1976) 16 Cal.3d 539, 546 ["calculated deliberation is required for a [first degree] torture murder conviction" as "it is the state of mind of the torturer—the cold-blooded intent to inflict pain for personal gain or satisfaction—which society condemns" and the crime is "comparatively more deplorable than lesser categories of murder"].) Thus, the jury finding that Warner had the mental state required for aiding and abetting torture murder necessarily supplies the malice required for murder.

15

In sum, we are "confident the jury *necessarily* found the [mental state and acts] required for direct aiding and abetting murder" (*Curiel*, *supra*, 15 Cal.5th at p. 467), and Warner is ineligible for relief under section 1172.6 as a matter of law.

## DISPOSITION

The trial court's order denying Warner's petition for resentencing under section 1172.6 is affirmed.

_____
Miller, J.

WE CONCUR:

_____
Stewart, P.J.

_____
Richman, J.

A171126, *People v. Warner*

16

Trial Court:  Superior Court of Napa County

Trial Judge:  Hon. Francisca P. Tisher

Solomon Wollack, under appointment by the Court of Appeal, for Defendant and Appellant

Rob Bonta, Attorney General; Lance E. Winters, Chief Assistant Attorney General; Jeffrey M. Laurence, Assistant Attorney General; Amit Kurlekar, Timothy Moore, Deputy Attorneys General, for Plaintiff and Respondent

A171126, *People v. Warner*

17